Lemann vs. Truxillo.

## No. 7505.

### BERNARD LEMANN VS. WIDOW F. A. TRUXILLO.

```
32   65|
46  483|
32   65
48  703
49  945
32   65
o108 211|
```

Where a court acquires jurisdiction only in virtue of a sequestration, it is without authority touching any personal demand against the defendant, whose domicile is within the jurisdiction of another court.

Where supplemental petitions are filed in a purely sequestration suit, claiming *additional* sums, each of such petitions must be separately sworn to, and a new order must be granted, and a new seizure made, under each of them, otherwise the court acquires no jurisdiction of the demands in those petitions.

A judgment against a succession not legally before the court is an absolute nullity.

A sequestration suit is not a proceeding purely *in rem*, and hence, if the defendant in the suit is without capacity to stand in judgment, no valid decree can be rendered disposing of the property sequestered.

The surviving wife, who has ceased to administer the deceased husband's succession as natural tutrix, who is not its administratrix, and who has renounced the community between her and her deceased husband cannot stand in judgment as defendant in a suit against the succession.

The release of sequestered property on bond, in a case in which the defendant is without capacity to stand in judgment, will not prevent the intervention of the legal representative of the owner of the property, the only person with whom the plaintiff could litigate his demand.

A suit against the plaintiff in a sequestration suit who has obtained possession on a release-bond, on the ground that the property was improperly bonded, must be brought in the court in which the sequestration suit is pending.

A writ of sequestration under which property is seized, which is invalid because of the omission of the judge to fix the amount of the bond in his order granting the writ, cannot be validated by a subsequent order fixing the amount. A new writ must issue, under the supplemental order fixing the amount of the bond. Such supplemental order can be made by none but the judge.

Every court has jurisdiction to determine the right to the possession of property held under its orders.

APPEAL from the Sixth District Court, parish of Orleans. *Rightor,* J.

*Henry Denis* for plaintiff and appellee.

*E. Howard Farrar* for defendant and intervenor appellant.

---

Henry Denis, for plaintiff and appellee, contended:

First—That the judge did *determine* the amount of the bond as required by law, when he signed the order with the bond under his eyes, and his attention being called specially to the amount.

And plaintiff contends that the judge had, at all events, the power to issue the order *nunc pro tunc*, the test of which is, whether the error to be rectified is that of the parties or of the court. 7 A. 283; 1 Rob. 165; 3 A. 260; 6 A. 701, 707; 10 A. 730; 12 A. 349, 596; 25 A. 115: 3 Otto, 412; 13 La. 434.

Second—Plaintiff, with leave of court, filed two supplemental petitions, which did not aver new facts, asked for as additional seizure, but

5

only alleged a larger indebtedness by defendant. Plaintiff contends the supplemental petitions need not be sworn to, inasmuch as, in cases of sequestration, the amount of the alleged debt is not sworn to at all. 5 La. 299.

Third—Defendant, after excepting to the jurisdiction of the court *a qua*, says, in so many words, in her answer, that *she has no interest in the suit*, either individually or as tutrix. Plaintiff contends that by so pleading she has put herself out of court and cannot contest with plaintiff; and that her appeal ought to be dismissed, inasmuch as she cannot possibly be aggrieved by a judgment rendered *in rem* upon property, and in a suit in which she has no interest. 27 A. 542; 15 A. 547.

Fourth—After the property sequestered had been bonded by plaintiff, Ruiz, the administrator of the succession of Truxillo, appointed after this suit was brought, intervened, and at the same time declining the jurisdiction of the court *a qua*, asked that the property sequestered be delivered to him.

Plaintiff contends that, under the jurisprudence of the State, no intervention is allowed after bonding of the property sequestered. 28 A. 863; 28 A. 792; 27 A. 239; 23 A. 751, and cases therein cited. The three cases first cited are cases of sequestration, and not of attachment.

Plaintiff contends also, that the intervenor cannot decline the jurisdiction of the court into which he comes voluntarily; that he must take the suit as he finds it, and litigate with the parties to the suit, or resort to the direct action. 19 La. 154; 8 Rob. 128; 20 A. 174; 21 A. 118; 21 A. 643; 27 A. 239.

E. H. Farràr, for defendant and intervenor appellant, contended:

First—That the order for a sequestration, as written and signed, is not a compliance with the law, and would not make the self-fixed bond furnished by the plaintiff valid, is too plain for discussion. The judge must fix the bond, and the plaintiff must comply with the order as rendered by the judge. C. P. Art. 276.

Second—That conservatory remedies are harsh, and must be strictly construed. 4 A. 456; 3 L. 18; 11 R. 158; 1 A. 308; 2 A. 415, 920.

Third—That the order fixing the amount of the bond *nunc pro tunc*, made on February 5th, more than a month after the sequestration issued and the bond was signed, could not infuse life into a still-born sequestration. *Nunc pro tunc* orders have never before in the history of our jurisprudence been used to *manufacture conditions precedent.*

In the nature of things, there can be no such thing as a *nunc pro tunc*

citation to validate a judgment rendered without citation, or a *nunc pro tunc* affidavit, order, and bond to validate an attachment or sequestration that issued without those essential prerequisites.

Fourth—That the exceptions to the supplemental petitions should have been maintained, is manifest. They were for other and additional demands besides that set forth in the original petition. They were not sworn to. No additional bond was given when they were filed. The jurisdiction of the court over the defendant necessarily depended on the possession and control by the court of the defendant's property by virtue of a conservatory writ. The court, therefore, had no jurisdiction of any demand which was not accompanied with an attachment, sequestration, or provisional seizure of property.

Fifth—That since Dorr vs. Kershaw, 18 L. p. 57, it has been the settled jurisprudence of this State, that after property under *attachment* has been released on bond it is too late to intervene and claim either ownership or a privilege upon it. 1 R. 277 ; 7 R. 349 ; 9 A. 360 ; 14 A. 583 ; 16 A. 25 ; 17 A. 314.

All of the above-cited cases step in the track of Dorr vs. Kershaw. The reasoning of the court in that case shows that the decision was based on the provisions of the Code of Practice fixing the obligation of the surety on the release-bond. From these provisions they deduce the conclusion that the release-bond is not a substitute for the property—the obligation of the surety being *to pay the debt of the plaintiff*, and not to preserve the property, or to substitute the property for the liability incurred by signing the bond.

Now, this rule was never laid down with reference to sequestration, until the case of Burbank vs. Taylor, 23 A. p. 751. An examination of that case shows that the court based its decision without reasoning upon the above authorities with reference to attachment. Those authorities destroy instead of supporting the decision.

Sixth—That either the defendant had a right to stand in judgment to represent the sequestered property, or she did not. The maintenance of the first alternative was essential to the success of the plaintiff's suit, and it was on this theory that the defendant's exceptions were overruled. The establishment of the second alternative necessitated the dismissal of the plaintiff's demand.

---

The opinion of the court on the original hearing was delivered by MARR, J., and on the rehearing by SPENCER, J.

MARR, J. Florentin A. Truxillo died, at his domicile, in the parish of Assumption, on the 15th October, 1877, leaving a widow and one

child, a minor. The widow caused an inventory to be taken, the prop-
erty consisting entirely of movables, such as household furniture, stock,.
implements and utensils, and the crop of cane then growing on the
plantation which the deceased had occupied and cultivated as lessee..
She also qualified as natural tutrix of the minor ; and she caused the
crop to be gathered and manufactured into sugar and molasses, part of
which was shipped to New Orleans for sale.

The creditors of the succession were not willing that she should
continue to administer without giving security ; and they required an
administrator to be appointed. By public notarial act of 4th January,.
she formally renounced the community which had existed between her
and the deceased ; and this act was recorded on the 7th January, 1878.

On the 5th of January she prayed the parish court to appoint her
administratrix, on her giving the requisite bond. Her application was
opposed by Joachim Ruiz, on the ground that she was incapable of ad-
ministering, in the existing condition of her mind, caused by the ha-
rassment to which she had lately been subjected by the creditors, and
he claimed the right to administer as a creditor. She waived her right
of preference as natural tutrix, and withdrew her application in favor of
Ruiz. He was appointed, gave bond, qualified, and obtained letters on
the 16th January ; and he entered immediately on his duties, and pro-
voked the sale of the property of the succession to pay the debts,.
which Widow Truxillo had not attempted to do.

On the 29th December, 1877, Bernard Lemann, of the parish of As-
cension, brought this suit in the Sixth District Court for the parish of
Orleans, against Widow Truxillo as survivor in community, and as
natural tutrix of the minor, to recover $600, balance alleged to be due
for advances and supplies furnished to the deceased, and after his death
to his widow, to enable them to make and gather the crop, for which he
claimed a privilege. On proper affidavit he obtained an order of
sequestration, and under the writ the sheriff seized in the hands of
Lanaux & Sons and Lehman, Abraham & Co. $1281 39, proceeds of
sugar and molasses.

On the 5th of January, a week after this seizure, plaintiff filed a
supplemental petition, alleging that the balance due him was $890 78,
for which he prayed for judgment with privilege, instead of the $600
claimed in the original petition ; and on the 14th January he filed
another supplemental petition, claiming the additional sum of $121 39,
with like privilege. Neither of these petitions was sworn to; and there
was no new order on them, no new writ, no new seizure.

Citations were issued on these three petitions, and they were served
on Widow Truxillo, in person, at her domicile in Assumption, by the
sheriff of that parish, on the 18th January, 1878, two weeks after she

had renounced the community, two days after her administration as natural tutrix had terminated by the appointment of Ruiz.

When this suit was brought plaintiff's attorney handed the affidavit, and a bond filled up for $1500, to a deputy clerk of the court, and requested him when he presented the papers to the judge for the order of sequestration to inform him that the property to be seized was worth about $1000, and that the bond was for a sufficient amount. The order was written by this deputy, and it was afterward signed by the judge, as follows : "Let a writ of sequestration issue herein as prayed for, upon petitioner furnishing bond and security conditioned according to law." A few days after the seizure was made plaintiff's attorney discovered that the amount of the bond was not stated in the order ; and at his suggestion, he and the deputy considering this a mere clerical error, the deputy inserted the words [in the sum of fifteen hundred dollars] between the words "security" and "conditioned" in the order.

On the 17th January, the attorney for defendant took a rule on plaintiff, in which the facts just stated are set forth, to show cause why the sequestration should not be dissolved and the suit dismissed, on the grounds that there had been no such bond given, and no such order for sequestration, as the law requires ; and that, as defendant resided in the parish of Assumption, the jurisdiction of the court depended upon the existence and maintenance of the sequestration.

On the 17th January defendant filed exceptions to the jurisdiction of the court. She gave the history of her connection with the succession, except that she stated that her application to be appointed administratrix was pending. It had been decided the day before ; but, probably, there had not been time for her to communicate that fact to her attorney in New Orleans. She plead that the property of a succession, in course of administration, cannot be sequestered by a creditor ; that the supplemental petitions had not been sworn to ; that the additional amounts claimed on them were not covered by the sequestration ; and that the debt sued for was not privileged.

The rule to dissolve was tried and submitted ; and on the 5th February it was discharged. "And, further, it is ordered by the court that all words in the mandate of sequestration after the words 'issue herein as prayed for' be stricken out, excepting the date and signature."

On the same day, on motion of plaintiff's attorney, "It was ordered that *nunc pro tunc*, the amount of said bond be stated to be for fifteen hundred dollars."

Shortly after the exceptions were fixed ; and after having been under advisement for more than two months, they were overruled on the 14th May.

In the meantime, on the 9th April, the plaintiff obtained an order

of court permitting him to bond the property sequestered; and the money, $1281 39, was delivered to him by the sheriff, on his giving bond for $1500.

On the 15th May, the day after her exceptions had been overruled, Widow Truxillo, reserving the benefit of her pleas of domicile and want of jurisdiction, answered by general denial. She also plead that she was without interest in the property sequestered; that she had renounced the community; and that her administration as natural tutrix had terminated by the judgment of the parish court of Assumption, appointing an administrator.

On the 25th May, Joachim Ruiz, the administrator, filed his petition of intervention, in which, after stating his appointment, and the facts material to his right, he alleged that he intervened, not for the purpose of giving the court jurisdiction over him, but solely for the purpose of obtaining possession of the funds in the hands of the court, in order that he might administer the same under the orders of the only court having jurisdiction, the probate court of Assumption.

He also alleged that he " declines any controversy with plaintiff in this forum as to his pretended privileged claim upon the proceeds of the sugar and molasses;" and he prayed that the sequestration be dissolved, and that he, in his capacity as administrator, be declared the owner of these proceeds, and be put in possession of the same.

Widow Truxillo answered this intervention by admitting the right of Ruiz; and she joined in his prayer. Plaintiff excepted that intervenor could not contest his right to sue in the manner and in the court he resorted to; that the funds sequestered having been, on the 9th April, released to him on bond, they were no longer in court, and the intervention could not be allowed; and that as intervenor declined to litigate with him, and only claimed the possession of property no longer in court, his demand should be dismissed. Without waiving his exceptions, he plead the general denial.

By judgment of 10th February, 1879, the exceptions were maintained, and the intervention of Ruiz was dismissed.

On the 6th March, on motion of plaintiff's attorney, and on suggesting that defendant had, in her answer, declared that she had no interest in the case, and had thereby put herself out of court, it was ordered by the court that plaintiff be allowed to make proof of his claim, and to submit the case for adjudication. Accordingly, on that day, on the testimony of plaintiff alone, final judgment was rendered in his favor " against defendant, Widow F. A. Truxillo, as widow in community and natural tutrix," for the sum of $1012 17,      *      *      *
with privilege on the property sequestered, the judgment to be operative only against the property, up to its value, "and not binding for any

excess over the value of said property, *in personam* against defendant."

Widow Truxillo and Ruiz appealed ; and their appeal brings up for review the judgment dismissing the intervention of Ruiz, and the final judgment.

We premise that, if the court had acquired jurisdiction by the original petition and the sequestration, it would have been only to the extent of the amount claimed in that petition and sworn to. The court was without jurisdiction touching any demand against Widow Truxillo personally, because of her domicile in Assumption ; and it could have acquired jurisdiction with respect to the property only by the seizure of that property. The supplemental petitions set up the new and important fact that some $400 more were due plaintiff than the amount claimed in the original petition. These petitions should, therefore, have been sworn to ; and new orders and new writs granted, and new seizures made under them. No such thing having been done, the demands set up in those supplemental petitions, in excess of the original demand, should have been dismissed for want of jurisdiction.

The final judgment is manifestly a nullity. The court held that defendant had put herself out of court; and yet a judgment was rendered against her with privilege on the property. If a defendant could put himself out of court, he would thereby put the case out of court, so that no judgment could be rendered against him. It is only in a proceeding purely *in rem* that a judgment can be rendered with respect to property otherwise than contradictorily with some person either in possession, or claiming title or possession. This is not a proceeding purely *in rem*.

Moreover, Widow Truxillo was not capable of standing in judgment with respect to this property, at any time after the 16th January, 1878. She administered temporarily as tutrix ; and if it be conceded that, as widow in community and natural tutrix, she was capable of standing in judgment on the 29th of December, 1877, when the suit was brought, she ceased to have any right as widow in community by her renunciation of 4th January, and she ceased to have any power to administer, as natural tutrix, on the 16th January, when Ruiz was appointed and qualified as administrator.

The court erred in dismissing the intervention of Ruiz. It has been decided that where property has been released on bond, it is no longer *in custodiam legis;* that the bond represents the property only as between those who were parties to the suit at the date of the bond ; and that no subsequent intervention could be allowed. All the decisions to this effect, prior to that in Burbank vs. Taylor, 23 An. 751, were in cases of attachment. See Dorr vs. Kershaw, 18 La. 57 ; Beal vs. Alexander, 1

Rob. 277 ; Same vs. Same, 7 Rob. 349 ; McRue vs. Austin, 9 An. 360 ; Wright vs. White, 14 An. 583 ; White vs. Hawkins, 16 An. 25.

The release-bond in attachments differs widely from the release-bond in sequestration. In the attachment the plaintiff has no right to bond ; and the obligation of the defendant who exercises that right is that he will pay and satisfy such judgment, up to the value of the property attached, as may be rendered against him in the suit. On giving this bond the attachment is dissolved; and the defendant resumes the possession of his property, with all the rights, power, and control touching it which he had before the attachment. R. C. P. Art. 259.

In cases of sequestration the defendant has the exclusive right to bond, for ten days. On his failure to avail himself of this right, the plaintiff may have the property delivered to him on bond. In either case the condition of the bond is that the party thus obtaining possession, if the property be movable, will not send it out of the jurisdiction of the court ; that he will not make an improper use of it ; and that he will faithfully present it after definitive judgment, in case he should be decreed to restore the same to the adverse party. R. C. P. Arts. 279, 280.

The object of the attachment is to enforce the payment of a debt, without any pre-existing right to the property attached ; the object of the sequestration is to enforce some pre-existing right to the property, whether the plaintiff claim the possession, or the ownership, or some lien or privilege. These differences would justify the conclusion that the release on bond of property attached takes the property out of the custody of the law, and substitutes, for the purposes of the suit, the bond with security; while, by its very terms, the release-bond in a sequestration keeps the property under the control of the court, in order that the decree, in reference to it, may be enforced against the property itself.

Nevertheless, in Burbank vs. Taylor, 23 An. 751, Carroll vs. Bride-well, 27 An. 239, and Phifer vs. Maxwell, 28 An. 862, the previous decisions in cases of attachment were applied to cases of sequestration; and it was decided that after the release on bond of the property sequestered, neither one claiming to be the owner, nor a creditor asserting a privilege, could be allowed to intervene. If this be true, as a general rule, it cannot be true in a case in which the original defendant is without interest, and without capacity to stand in judgment in the suit ; and the person seeking to intervene is the only one with whom the plaintiff could litigate his demand.

After the 16th January, 1878, there was no party to the suit representing or capable of standing in judgment for the owner of this property, that is, the succession of Truxillo. Plaintiff could not have ob-

tained a valid judgment on his demand without first having made the legal representative of the succession of Truxillo a party; and the sole representative of the succession was Ruiz, the administrator. It was the business and the duty of plaintiff to have caused Ruiz to be cited as defendant. But plaintiff did not choose to do this. He had obtained on the release-bond a sum of money more than sufficient to satisfy his demand ; and it is not probable that he would ever have taken any steps to make Ruiz a party, or to have a definitive judgment rendered. But Ruiz, mindful of his duty as administrator, and of his interest as a creditor, came into court voluntarily, and sought, by way of intervention, to make the precise issues with plaintiff, in that form which he could have made as defendant, if plaintiff had chosen to afford him an opportunity to do so by citing him to answer.

In Tucker vs. Musselman, 6 An. 226, it was decided that where the plaintiff in sequestration obtains possession under a release-bond, he cannot be sued for that property in another court, on the ground that it was improperly bonded, while the suit in which it was sequestered is still pending. This decision proceeds upon the plain proposition that property sequestered, delivered to the plaintiff on bond, is *in gremio legis;* and that the right of plaintiff to retain possession under the bond until definitive judgment cannot be questioned in any other court of original jurisdiction. The contrary doctrine would lead to inextricable confusion and complications.

In this case, Widow Truxillo, the only defendant, had striven in vain to have the sequestration set aside, and the suit dismissed. She had informed the court that she was not the representative of the succession ; and the plaintiff, having the money of the succession in his possession, had failed to cite the administrator. The administrator could not have made himself a defendant in the suit; nor could he have sued plaintiff in any other court for the money which plaintiff held under the order and by authority of the Sixth District Court. He was compelled to proceed in that court ; and it was wholly immaterial whether he preferred to bring a separate suit, which would necessarily have been cumulated with the original suit, or to intervene in the original suit. In either case, the question to be determined was the right of plaintiff to retain the money delivered to him on his bond. If the court was without jurisdiction, the sequestration could not be maintained ; and the plaintiff would be bound to restore the money. If the court had jurisdiction, and the sequestration was not valid, the detention of the money under the bond was not lawful ; and the administrator was entitled to the possession.

Waiving any expression of opinion now as to the right of a creditor to sequester the property of a succession under administration, we shall

consider the question of the validity of the sequestration upon the hypothesis that the court had jurisdiction to the extent of the value of the property sequestered.

The law requires as a prerequisite to the issuing of the writ of sequestration, that the judge shall fix the amount of the bond to be given by the plaintiff. If the judge should grant the order, without fixing the amount of the bond, he might supply this omission by supplemental order; but no other person could. In such case, if the writ had been issued, and seizure made, under the original, defective order, a new writ should be issued, and new seizure made on the corrected or supplemental order. A writ and a seizure under an invalid order cannot be validated by a subsequent valid order. The record in this case shows that the original order was fatally defective; and as there was but one writ, that which was issued under the original invalid order, and the only seizure was under that writ, on the day that it was issued, the detention of the money seized by the sheriff, under that writ, and the subsequent release and delivery of it to the plaintiff, were equally illegal.

Jurisdiction cannot be acquired by the illegal seizure of property; nor by the citation of a person not amenable to the process of the court, and not capable of standing in judgment in the suit. But every court is competent to determine the right to the possession of property held and detained under its orders and by its authority; and the Sixth District Court alone had jurisdiction to determine, on the demand of the administrator, whether he, claiming in his representative capacity, or plaintiff, claiming under the sequestration and release-bond, was entitled to the money seized. It had no jurisdiction whatever of the money demand of plaintiff against the succession of Truxillo.

We do not think it necessary to remand the case, because the record contains all the evidence and issues requisite to the final determination of the controversy; and justice requires that it should be determined without further delay.

It is therefore ordered, adjudged, and decreed that the judgments appealed from be annulled, avoided, and reversed ; that the exceptions taken by plaintiff to the intervention of Joachim Ruiz, Jr., administrator, be overruled, and the intervention be reinstated ; that the demand of plaintiff against the succession of Florentin A. Truxillo be rejected, as in case of nonsuit, with reservation of his right to proceed against the succession in the proper tribunal, as if this suit had not been brought ; that Joachim Ruiz, Jr., in his capacity as administrator, be decreed to be the lawful owner and entitled to the immediate possession of the money, to wit, the sum of twelve hundred and eighty one dollars and thirty nine cents ($1281 39), sequestered in this suit, and by the sheriff released on bond and delivered to Bernard Lemann on the

9th April, 1878 ; that there be judgment in favor of said Ruiz, adminis-
trator, against said Bernard Lemann, for said sum of twelve hundred
and eighty one dollars and thirty-nine cents ($1281 39), with interest at
the rate of five per cent per annum from the ninth day of April, 1878,
until paid ; and that the said Bernard Lemann pay all the costs of this
proceeding in this court and in the district court.

Mr. Justice WHITE having been of counsel takes no part in this
decision.

## ON APPLICATION FOR REHEARING.

SPENCER, J.  Our great respect for the plaintiff's counsel, and our
belief that the intemperance of his zeal, in the application for rehearing,
is due to the sincerity of his convictions, have induced us to most care-
fully reconsider the opinion heretofore rendered.  The counsel says :
" It is a remarkable fact that the judgment rendered reverses *five* points
or rules of practice up to this time established by the jurisprudence of
the State."  That in support of these rules *he* has " cited precedents
and authorities," while in reversing them this court has cited none. "At
one sweep the court has made  five important changes in our juris-
prudence," and he no longer " dares tell a client how the law stands !"
Reminding the court that its pride of opinion makes it his adversary, he
proceeds to demonstrate our errors.

It requires but a brief experience to teach judges that their decrees
are frequently *subversive* of the *"established jurisprudence"* only because
they are adverse to the desires and not responsive to the hopes of counsel.
Without arrogation, we think it may be safely asserted that judges, who
have no interest, feeling, or passion to warp their minds, will more fre-
quently be right in their conclusions than will  the counsel who has been
wrought to white heat by the friction of combat.

### I.

The first point wherein we are charged with the subversion of the
jurisprudence is in having held that an order of sequestration, *rendered
at chambers,* which did not fix the amount of bond, was fatally defective,
and that the judge could not, months after the writ had been executed,
cure the defect by an order fixing the bond *nunc pro tunc.*  The counsel
cites us to the authorities overthrown.  They are found in 7 An. 284;
1 R. 165; 3 An. 260; 6 An. 701 and 707; 12 An. 349; and 25 An. 115.

We have studied these cases attentively, and if there is one of them
that sustains the proposition that the bond may be fixed *nunc pro tunc,*
in cases of the conservatory writs of injunction, sequestration, etc., we
have failed to find it.

We understand those cases as holding what we had supposed to be

elementary, to wit: That where an order *has been made, or a proceeding had,* in a cause pending in a court of record, and where, from oversight or negligence, the record *does not show* that such order *has been rendered or proceeding been had,* the court may order it to be entered of record *nunc pro tunc.* Even this rule must be confined to orders and proceedings in open court; for in granting orders *at chambers* the judge does not manifest or declare his will otherwise than in writing. As was said in one of the cases cited by plaintiff, 12 An. 349, " the judicial acts of a court of record are evidenced by the record alone ; that no parol proof of a verbal order is admissible to supply the want of record evidence. That an order *rendered,* but *not* entered,* may in proper cases *be entered, nunc pro tunc.*"

## II.

In the second place, we held that where the jurisdiction of a court existed only by reason of its seizure of property, if that seizure was illegal and void, the court has no jurisdiction. In other words, the seizure being the basis, the reason, of its jurisdiction, the seizure failing, the jurisdiction was gone. *Sublato fundamento, cadit opus.* As a corollary of this, we held that the jurisdiction was limited to, and measured by, the amount of the debt for which the seizure was effected; and that further money demands, in amended petitions, for which no seizure was made or prayed were therefore beyond a jurisdiction which rested only on the seizure. The only case cited as overturned by these views is that of Ohio Ins. Co. vs. Edmonson, 5 L. 298. In that case the plaintiff, claiming a lien on a steamboat, presented a petition setting forth the nature, etc., of its claim, and prayed for a writ of *provisional seizure.* The facts stated being duly sworn to, the writ was granted. In a supplemental petition plaintiff alleged that the facts stated in its original petition entitled it to a writ of sequestration also. To this supplemental petition was annexed plaintiff's affidavit that the facts stated in the *original petition* were true.

Held, that as the facts of the original petition were sworn to, and entitled the plaintiff to a sequestration, and as no new facts were set out in the supplemental, it was not necessary for him to swear to its allegations. The court intimated, and correctly, that the second affidavit to the facts of the original was unnecessary, as they were already sworn to before.

The court simply held that the original petition and affidavit thereto entitled the plaintiff to either or both writs. We leave the counsel to trace the slightest analogy between that case and this. We cannot.

## III.

The plaintiff brought suit against the widow and tutrix administering to recover a debt of the deceased. She subsequently renounced the

community, and was superseded by the appointment of an adminis-trator (Ruiz). Thereupon she alleged that she had no capacity to stand in judgment for the estate, and averred that she had no personal inter-est in the property. At this juncture, Ruiz, the administrator, who superseded the tutrix, came forward and asked to become party to the suit. He was the only possible person contradictorily with whom plain-tiff could proceed. But the plaintiff excepted to Ruiz' right to appear or intervene ; had him dismissed from the case. Then he had it sol-emnly adjudged that the widow and tutrix had put herself out of court, and could no longer be heard, and thereupon proceeded to take an *ex parte* judgment *against the widow and tutrix*, limiting his judgment in execu-tion to the property sequestered. In other words, having expelled from the case all opponents, having no longer an adversary "to molest or make him afraid," he proceeded *ex parte* to the proof of his claim, and took judgment therefor "*against the widow and tutrix*" whom he had just had ejected from the case as being without capacity and without interest ! We declared the judgment so taken a nullity, for want of a defendant. The counsel says that in so holding we have overruled two decisions of this court, and violated logic as well as law. We leave him to wrestle with the problem, remarking *en passant*, that it is a mere delusion to sup-pose that plaintiff's suit was what is known technically as a "proceed-ing *in rem*." That proceeding is provided for in C. P., arts. 285, 290, *et seq*. It can only be resorted to where the party has a privilege on a thing "either lost or abandoned by its owner, or whose owner is either un-known or absent." Even then, "an advocate" must be appointed for the owner, and public notice be given in the papers.

IV.

Counsel says he has cited six leading cases to the effect that an intervenor cannot except to the jurisdiction of the court, and that we have held that he can do so.

Plaintiff was the creditor of an estate opened in Assumption. He seized property of that estate in Orleans, claiming privilege thereon. We waive any decision as to his right to do so. At the time of bringing suit, the estate was administered by the widow as natural tutrix, and she was properly sued as its representative. But before any progress had been made in the suit, she was destituted from the administration, and superseded by Ruiz as administrator. She pleaded these facts. They were not, and could not be, denied. What, under these circumstances, should plaintiff have done ? He should at once have asked to have Ruiz cited as defendant, he being the successor of the tutrix in the ad-ministration. Plaintiff did not do so. But Ruiz came without citation and asked to be admitted to the defense of the suit. Upon reflection, we see no reason why the heir or legal representative or successor of a

defendant, may not, on his own motion, make himself party in lieu of the person to whom he succeeds, upon proof that he is such representative. Otherwise, plaintiff by neglecting or refusing to have him cited might keep a succession open forever. We held that Ruiz could make all the defenses that the tutrix could or did make. He was in reality the defendant, and the only defendant that there could be in the case, after his appointment as administrator. Besides, he had a right to claim from plaintiff the property or funds of the estate illegally held by him under bond. No other court could have restored him that possession. He had a right to adopt and insist upon the defenses made by his predecessor as defendant. Why cite to us, as applicable to this case, authorities which treat of the intervention of *third* persons? Can there be a suit with only a plaintiff and an intervenor in it? If Ruiz was not defendant, then there was no defendant, and therefore no suit.

## V.

On the subject of the different effects of release-bonds in attachment and in sequestration, we only desire to add to what we have already said a few observations.

It would be strange indeed if a plaintiff could become owner of property by simply sequestering it on a claim of privilege or ownership and bonding it. Yet plaintiff's counsel insists that the effect of plaintiff's release-bond is to put the property at his disposal. Is it possible that because I have a privilege on a thing, sequester it, and bond it, I can dispose of it at my pleasure? Could not the owner revendicate it in kind in the hands of my vendee? Would not any sale of it by me be absolutely void? Is it not manifest then that a plaintiff *in sequestration* gets by his release-bond only the custody and keeping of the thing pending the litigation? That he holds the property *for the court,* and not *for himself?* Yet the counsel cites us to 24 An. 570, as authority for the doctrine that plaintiff in such case can dispose at pleasure of the thing sequestered. The case decides nothing of the sort, and would be absurd if it did. It simply decides that the *defendant and owner* who has bonded his property under sequestration may remove it from a rented place which he is leaving. Of course he can. He is its custodian, as well as its owner.

We see no reason to change our former conclusions, and the rehearing is refused.